. Ms. Watson. 15-1967, People v. Clifton. Counsel, who are going to argue, please approach. Good morning, Your Honors. Stephanie Buenta from the State Department of Health and Human Services on behalf of Mr. Clifton. Assistant State's Attorney Tasha Marie Kelly on behalf of the people. Okay, you're all familiar with the rules here. We're looking for basically 15 minutes per We don't have anything after you, so if you get a little too loquacious or we get a little too interruptus, we won't worry about the clock that much. Okay? And the microphones, please speak into them, okay? May it please the Court, Counsel, I'm Stephanie Buenta from the Office of the State Appellate Defender on behalf of Mr. Clifton. Based on the State's confession on the Krinkle issue, I will be focusing my argument on the line-up suppression issue, but I'm happy to answer any questions you may have regarding the additional issues. The three witnesses in this case describe the offender of the armed robbery as having four distinctive characteristics. Long dreadlocks, a face tattoo or a mark on his face, and wearing an all-dark blue or black hooded sweatshirt, and all-white low-top gym shoes. Clarence Clifton was placed into three separate line-ups in which he was the only person who had these four distinctive characteristics. The officers, who were aware of the witness's description of the offender, not only allowed Clifton to be spotlighted, they did nothing to prevent it. It's no surprise that... Are they supposed to go out and find only people with tattoos or marks on their face? There's no case law that says that. No, but what they could have done is something very simple, which was to neutralize the clothing. So you're not complaining about the tattoo? I mean, you mentioned the tattoo, but there's nothing done about the tattoo. Is that what you're saying? Well, it would have been, we understand that it would have been a higher burden for them to find four other line-up fillers who had a face tattoo. Well, wait a minute. All of the guys in the line-up could have taken off all their shoes and then nobody would have white shoes on, and all the guys in the line-up could have taken off their jackets, hoodies, whatever, and then nobody would have a hoodie on, and then the only thing left that would be distinguishing him would be his hair, and they take these guys out of the line-up. Maybe there just weren't any people with that kind of, or in the jail population, I think, maybe there just weren't any guys that could find him with that kind of hair, but the other two things, the hoodie and the shoes, they could have just eliminated that by having those gone. Correct. And we're saying that because the officers didn't neutralize that situation by something that requires minimal effort to do, that rendered the line-up unduly suggestive. It's an analogy to help the court understand what kind of police action is involved here, is when police officers have to compose a line-up. And the police officers, in this case, had the victim's description of the clothing. Right. And the state concedes that all three of the witnesses had described the offender wearing the specific clothing, these other distinctive features, and they had, the officers had that description while they were compiling the line-up. So an analogy would be, for example, if when they compile a line-up as to trying to find four additional participants or fillers in the line-up who have similar height or weight as the described offender, there is some leeway as to the height and weight of the other fillers, but there shouldn't be any, they shouldn't do anything to, nothing, the discrepancy shouldn't be significant where it would call undue attention. Well, what about people versus Johnson where the defendant was wearing red pants and he was the only one wearing red pants?  And there's other cases similar to that where the defendant will stick out. Correct. Yes. Johnson was cited, and I think the state also cited, three additional cases. And those cases are distinguishable here in that, in that case, it was only one distinctive characteristic. Here, there was four. Well, you said that the tattoo, they didn't need to find somebody with a tattoo. So are they really four? And, I mean, clothing, doesn't that go to the, really the weight one would give to the identification? In this case, we would argue no, just because here we have the clothing connecting Mr. Clifton to the offense. Unlike in Johnson and even some of the other cases that the state cited, the witnesses didn't describe the offender's clothing as to the clothing that was then complained about as being unduly suggestive in the lineup. So in, for example, you mentioned Johnson. Yes, he was wearing his red clothes, and yes, the court found that it was an unduly suggestive because he happened to be wearing the clothes that matched what was in, you know, the description of the offender's clothing, and that he was arrested in his own clothes. Here, the distinction is the officers knew. No, but he also was arrested in his own clothes. Here. Right, but he was placed in a lineup when the officers knew that the described offender had, was wearing a dark hooded sweatshirt and white shoes. There's a case that the state cites that actually supports our suggestion that police officers should have acted to easily minimize the suggestiveness of the lineup. They cited People v. Peterson, and in that case, the defendant complained that the lineup was unduly suggestive because he had a unique hairstyle. It was long hair with pink rollers in his hair. The officers testified that because they had knowledge of this unique hairstyle, what they did was have all the lineup participants wear a baseball cap to hide the defendant's hair and have them wear the cap facing backwards. The trial court found that that was, they did their due diligence to try to minimize the fact that they weren't aware of such a significant distinctive feature, and therefore, the lineup wasn't unduly suggestive. All we're saying here, as the Honorable Patinsky has, the Justice Patinsky has mentioned, is he could have very easily had all the lineup participants take off the shoes, or they could have had Mr. Clifton take off his hoodie, because it's most likely he's wearing a shirt underneath, or they could have tucked in the hood. So, and so also what you're saying is that it's not just one article of clothing. It was two. Well, yeah, it was, and, and two, one facial and one hair. And even if you can't correct the facial, you could have corrected the other three. So if there had only been one, maybe it would have been a little different, but you're saying you have an accumulation of various items that were identified that the offender was wearing at the time of the offense, so it made it more likely that they would pick an individual who was wearing similar clothing. Correct, Your Honor. The more factors, or the more articles of clothing that were similar to what the witnesses described the offender as wearing, the higher level of suggestiveness was seen in the lineup. Do you have a case that says that, that the higher level of suggestiveness as a result of the more articles or factors that appear to be identical to what the witnesses told police about the incident and the offender? There's no real published decision that talks about the statute that was in effect at the time that the lineup was conducted, but we do have Wade, which is a federal case, and I believe it was Faber who might have, Faber, or there's another case that interpreted Wade in Illinois, in saying that what matters is the significance of the suggestiveness, or the seriousness of the suggestiveness. So under Wade, we would argue because of the article clothes as described to the offender, that was what rendered, that was a police action that rendered the lineup unduly suggestive. There was only this one lineup photo introduced in court by trial counsel, right? Is that correct? I believe there was two. Do either of them, the one that we have seen does not show the shoes? Does the other one that you're talking about show the shoes? Yes, it should be in the exhibit CD, and even if it's not there, there's the supplemental electronic record. There's two lineup identification forms for both Victoria Tolbert and Michael Smith that the officers annotated what clothing each participant wore, and there it shows that, in effect, Michael Smith was only wearing all white gym shoes. The others were wearing a combination of either black or black and some silver or darker colored gym shoes. What's your response to Faber? The court said that without more to indicate that the police through its activities spotlighted the defendant in the lineup, there is no improper influence. So here, like in Faber, the defendant was wearing the clothes he was arrested in. There was nothing done to create a suggestiveness as a result of that. And I would say Faber is, again, it was distinguishable because there's just one single characteristic. There's just one article of clothing. Here there was two, and I believe in Faber, the testimony is unclear, the evidence is unclear, if police officers had knowledge of the witness's description of the offender. So again, it's because of the level, because there's more multiple distinctive factors, the level of suggestiveness is even higher. Well, say the police had found four other guys with similar hair, similar size, similar build, and put them all in orange jumpsuits with no shoes and socks. Would we be having the same problem because of the tattoo? Probably not, because, I mean, it is unique in and of itself, and there are two of the witnesses, Victoria Talbert and Ashley Lee, who said that in the lineup photo, he was the only one who had the face tattoo. I think it would depend on if that was the case, more facts that we would know, like did they do something to conceal that tattoo, but it would depend on if any further action was taken. Because the construction of the lineup was unduly suggestive, it rendered the witnesses' lineup identification of Clifton unreliable. We acknowledge, as the state points out, it's not really clear-cut whether the biggest factors lean towards in favor of admissibility or against admissibility of their in-court lineup identifications. But if the record stands there, we agree with the state that the proper remedy would be to remand this for possibly what we would call an attenuation hearing, or a hearing where the state could present more evidence to see if those lineups had an independent origin. But this goes back to the ineffective assistance of counsel? Correct. So if you were successful in getting us to remand it for a Crankle hearing, then what? This Court would, if this goes back to Crankle, these issues are going to come up again. Because it's most likely, they'll come up again. And so there's concern if he was to, after preliminary Crankle hearing, if he was to get a new trial based on those Crankle motions about the Crankle hearing, the Court still would have to, the trial court needs to be guided as to, at the new trial, whether there's sufficient evidence to protect against double jeopardy issues. But that again ties back to effective assistance of counsel. If there's a Crankle hearing, and say, for example, the defendant is successful in arguing that his counsel is ineffective, what do we do with the rest of the stuff? The gun, the lineup, everything else? Well, the Court would still need to address it to provide some guidelines to the trial court as to what to do. We should. Yes. And you're asking us to. Yes. Yes. Where did you ask for that in your brief? I'm just looking at the prayer for relief on page 50, and it indicates that you're asking that we reduce the conviction for armed robbery to simple robbery pursuant to argument one and two. Let's assume that we affirm. Okay? Mm-hmm. And then you ask to remand the case for preliminary Crankle inquiry pursuant to your third argument, or reduce his sentence on remand for resentencing pursuant to argument four. Let's assume that we would affirm that. If we affirm the convictions in one, despite your arguments one and two, and despite your argument in four, why would you get a new trial? Where's your request for a new trial? Under the suppression issue, it's actually in the reply brief where I asked for the relief to be a new trial. It seems to me that if we're taking the substantial arguments that you make regarding the identification, regarding whether or not there's adequate proof that it was a gun that he held in order to accomplish his criminal enterprise, and we believe that the judge's sentencing was something within her discretion, I don't see where you'd have a right for a new trial on that. Well, we would request it under the Crankle relief. It was a preliminary Crankle hearing to hear his complaints of ineffective assistance of counsel. He didn't specify specifically if any of those ineffectiveness claims are to the wind-up issue. Therefore, what we ask is for a remand for there to be a factual determination of those issues. But I understand what you're saying. And the state agrees that there should be a preliminary Crankle hearing. You've got their agreement. My question for you is, can you give us any understanding or argument as to why it would be improper for us to affirm the convictions and still send it back for a preliminary Crankle hearing? That's what the state is asking us to do. When I'm asking you to give me and give us, not me, argue with me. No. Give us an argument as to why we should not do that. Why should you instead rule on the substantive issues and not grant the concession in the Crankle hearing? Were you asking in the alternative? Yes, I was. Like, if we did remand it back for a Crankle hearing, then we shouldn't decide everything else. But if we didn't remand it back for a Crankle hearing, then we should go ahead and decide everything else. I had asked if it was being remanded for a Crankle hearing, a preliminary Crankle hearing, that the court should address the other issues. Because any time, obviously his conviction is not being reversed by this court, but there still needs to be some guidance if he wants to get a new trial. Based on the Crankle, whether any other issues are. . . I can't speak for my colleagues. I'm having a hard time understanding how we could theoretically send it back for a Crankle hearing for ineffective assistance of counsel, and then do anything about anything else until we got the result of that Crankle hearing. The court could, described that way, could retain jurisdiction on the other issues until the Crankle hearing is resolved. And I think my colleague, Justice Lavin, is concerned that that's not what you asked for, the Crankle hearing first, and then everything else. You didn't ask for that. What you asked for was everything, including the Crankle hearing. And what I'm reading into that is that you want the Crankle hearing, and then everything else, but you didn't say it that way. Okay. I apologize if there's. . . I don't think we can say that for you. No, no, no. I apologize for that. I mean, again, the opening brief, we had no idea as to whether the state was going to concede on the Crankle issue. So the prayer for relief in the opening brief seemed to be confusing as to asking for alternative relief. I know you can't speak for the State Appellate Defender, but does it make more sense for the State Appellate Defender to have a policy that when the State agrees, there should have been a Crankle hearing to just say to us, send it back for a Crankle hearing and put everything else on hold? Yes, Your Honor. But that is not the policy right now? I am not familiar with the. . . Off the top of my head right now, I couldn't say that. It doesn't happen very often. No. Okay. Actually, I think it has. . . I think in another case, we actually. . . This issue came up, whether the public court was able to. . . I'm having trouble with the sequence because if we affirm everything else, and we've said to the case, we've parlayed to the case, oh, everything else is okay. So I'm wondering whether that takes the Crankle hearing. And I just am having a problem wrapping my arms around what it is exactly that you want that we could actually do based on what you've asked for in the record in front of us. I understand your concerns, Your Honor. And I'm sorry if it wasn't. . . I should have probably addressed the. . . It really wasn't raised in the brief, so we're hitting you with a bit of a curveball here. I understand. You're capable of hitting curveballs. We've seen you before. Yes. So I would. . . Your concerns are very valid. And that, yes, it makes sense for it to be remanded, deal with the Crankle issue first, and retain jurisdiction so that the court can decide on the other issues. But now I'm confused. Okay. Because your prayer for relief at the conclusion of your reply and at the conclusion of your opening brief are exactly the same. And the only argument you make with regard to responding to their concession, the State's concession on the Crankle, is one paragraph, and as the State concedes this issue, no reply is necessary. So there's nowhere in that that you say, well, we should just go to the Crankle hearing first and not decide the issue, the two issues that preceded it, which is what you asked for. So now I'm not sure. . . argument than what you have said in the briefs. And if you are, why is that change coming forth? I mean, is it a result of our questions or do you have some law that would support that type of relief where we would not rule on the substantive issues and simply remand for the Crankle hearing? Well, if I might double-team you, why is it not forfeited? I mean, you're asking for us to rule on the substantive issues, and if we affirm all of those substantive issues, then why don't you just get a Crankle hearing, a preliminary Crankle hearing, and nothing else on remand? I guess if you could supply us with a case or two after you go back to your office, that might be of assistance, but I think forfeiture is also an issue here, based on the record in front of us. Okay, I agree with what you're saying. So I guess the best thing would be is to file a supplemental brief responding to the forfeiture, if the argument is forfeited, and if there's any case law to support the argument and the issues that came up today in oral argument. If we decide that, we'll let you know. Okay. Do you want to address the issue regarding whether or not it was, in fact, there was adequate proof on the gun? Sure. Mr. Clifton acknowledges that under Wright, unequivocal testimony of a single witness is sufficient to establish that the object used is a firearm. We maintain that the evidence in this case was insufficient, and the distinction is the quality of the evidence. Well, how would you respond? We were going to ask this one. Charles case. Two of us in this panel were in Charles. In Charles, you have a young woman who says it's a gun, one witness. Here we have three. And we have one witness who says more than just a gun, gives a caliber, possibilities, and is aware of guns. So we have a stronger case in Charles. So how do we not follow Charles? This case is distinct from Charles because we have one witness who equivocated. That was Ashley Lee. She testified at Charles, oh, I saw the offender pointing a gun and threatening Michael Smith. But we have another offender, another victim, who had the gun within an inch of his face. And he's the one that knew about guns, and he's the one that identified. We don't need three people. One witness is enough. And that one said it was right within an inch of my face. And he knew one or the other caliber, color, knows about guns. A lot more information. Unlike the witness in Charles, that witness, Michael Smith, was impeached. On the identification? Of the gun, too. How was he impeached? There was the report by, I believe, Officer Matthews, who said that all the complaining witnesses had only described the gun as being black. So it isn't clear whether he was able to determine the caliber at the time or did he just have time to make his testimony better after reflecting after the incident occurred. And then we have also Ms. Victoria Talbert, who just describes the gun as being black, and she was also close enough, as close to the gun as Mr. Smith. And therefore, she also couldn't give any more specific description of the gun's composition or its functionality, which in light of the 2000 amendment to the statute, there has to be something more objective. So we maintain that under, you know, in this case, the evidence is just insufficient. If you have no further questions, Your Honor, we'd ask for the reasons stated in this brief today to grant Mr. Clifton relief under Argument 1. If you were to find that the evidence doesn't establish that it was a gun, to reduce his sentence to aggravated robbery, to vacate this conviction, remand him for a new trial pursuant to the lineup suppression issue, or reduce or remand his sentence for sentencing, or if not, alternatively, to remand for a preliminary crinkle hearing. Thank you. Yeah, please, the Court. I'm Assistant State's Attorney Tasha Marie Kelly on behalf of the people. To briefly address Issue 1, the people did file a motion to cite additional authority, the Charles case that you mentioned, Justice Levin, and it's our position that that case should control here. What about the comment that his description of the caliber of the gun happened later on, and that somehow that makes it less credible? The initial description that was given by Mr. Smith was given to the police immediately after he had just been robbed at gunpoint, with a gun pointed to his face, with his three friends along with him. So he told the police what he could remember in that moment, and the fact that later at trial he provided additional further description isn't impeachment, it's simply the fact that after he thought about it, he was less frazzled, he was out of the stress of the moment, that his knowledge and familiarity with guns kicked in, and he realized that what he had seen was a 38 caliber. Do you think he got more familiar with different kinds of guns between the time he was robbed and the time of the trial? Googled it or did some research or whatever? That's also certainly a possibility, but to call it impeachment I think is a mischaracterization. It's not inconsistent with what he previously said. Other witnesses testified as well that it was. But it is different. It's different. It's more of a description, yes. But impeachment would suggest that it's something that's inconsistent with what he said previously, and saying that it's a 38 is not inconsistent with saying, I saw a black gun. But getting back to the Charles case, as you said, Justice Lavin, this case is a stronger case. The facts of this case are stronger than what we had in Charles. Here we have the three witnesses, and all three of the witnesses indicated that they saw a gun. As you pointed out, one witness had the gun literally in his face. And the other significant thing about the decision in Charles is that there was a discussion about the fact that, in the Wright case, there had been a discussion by the Supreme Court about the fact that there was familiarity with guns on the part of the witnesses. And this court explained that they were not interpreting Wright to mean or to suggest that the witnesses had to be familiar with firearms in order for their observation of the gun as a real firearm to be considered credible. And that's another significant point from Charles. Charles really just reiterates what the Supreme Court has said in Washington and in Wright. And so we would ask this court to follow its own decision in Charles as far as the first issue is concerned. Moving on to the second issue, it's the defendant's burden, of course, to show that the lineup was suggestive. And based on the testimony of the witnesses, particularly Ashley and Victoria, the defendant failed to meet that burden. Neither Ashley or Victoria testified that they made their identification of the defendant based on the fact that he was the only individual who was wearing the clothing that matched the description. It's also significant, of course, that the defendant was arrested in those clothes and placed in the lineup. Shouldn't we be more concerned here than in the cases that you cite where we have multiple situations? We have the shoes. We have the hoodie. We have the hair. And we have the mark on the face. Most of the other cases, you might have one factor, and they've done something about some of the other factors if there was more than one. Here, we have multiple situations, which when you add one upon another upon another, it makes it more apparent or suggestive of the defendant. And perhaps in the case of Michael Smith, that is true, because he, Michael Smith, did make the statement that he made his identification based on one or more of the factors that you're talking about. And that identification was properly suppressed based on his testimony. But it was suppressed based upon the fact that he said he was there with others who were in the room? I think it was the combination of the two. But we don't have that same testimony from Ashley or Victoria. And when Ashley and Victoria were asked about the same things that Michael was asked about, what they testified to was that we recognize the person who had the gun. We recognize the person that robbed us. And they didn't testify similar to Michael Smith that they were in any way influenced by the factors that you're talking about. And, you know, there are numerous cases that we've cited in our brief that talk about lineups where people are the only person who is dressed in the clothing that matches the offender, where they're the only person who's bald and has a beard, where they're the only person who's wearing red pants, where they're the only person in the sleeveless T-shirt that the offender was wearing. And the courts have said that's okay. Yeah, but now we have the beard, the hair, and something else. I mean, it's not just two using your examples. It's three or four. But there's no case that says that there's a certain number of factors, like two is okay but three is not or three is okay but four is not. Well, maybe this is the case. Maybe this is the case that says when there's so many, you know, they've accounted for age and weight and height pretty much that that's not the problem here. But we do have one witness who commented about the clothing. And we know the hair was different. We know the mark on the face as well as the shoes. And we've discussed how that could have been easily remedied by taking off shoes, covering them up, or his removal of his jacket. So it's not a difficult issue to resolve. And, you know, it could be a case where because of the multiple number of factors, it raises issues. But what the court is looking at here is whether it was so irreparably suggestive that a fair identification could not be made. And in this case, there's nothing to suggest that the factors that you're talking about affected the witnesses that made the identification. The two other witnesses. Yeah, excuse me, the two other witnesses. But we know it affected one. And I'd have to go back and look at exactly what they testified to, but whether they were asked at trial about the clothing and other things, the two witnesses. Ashley Lee was asked were there other people in the lineup who had a scar or a tattoo. And she said, you know, I didn't even notice. I just recognized the individual who robbed me. I believe that Victoria Talbert was asked about were there other people wearing a black sweatshirt. I think you're right. And I believe that she said something similar. I mean, if you look at the lineup photographs, there were other people wearing black shirts. There were other people who had braided hair and dreads. Not as long as his. Not as long as his, but there were people with dreads. There's people in black shirts. There's people in, you know, all kinds of pants. So, you know, the detective stated I did the best that I could. Again, they arrested him in these clothes. They didn't pick these clothes out for him. They placed him in the lineup, and the identifications were made. I don't think there are any cases out there that say that if you arrest the guy in the clothes that he was wearing when he held somebody up that you have to go out and buy him new clothes, right? There are not. And there are cases that say if you place someone in the lineup in their own clothes, I believe it's favor. It's cited in my brief. There's no due process violation, and that's exactly what happened here. I'm sorry, if I could just address one other thing. In terms of the first issue, counsel did file a motion to cite additional authority as well, the McLaurin case. I would just state to this court the McLaurin case is wrongly decided in the sense that the court drew a distinction between possessory gun offenses and offenses like the one before this court, which is armed robbery, and suggested that because in the court's words, the armed portion in armed robbery is more of an aggravating factor that there's somehow a lesser burden, and it's different from a possessory offense in that sense. But to prove an armed robbery, the state has the burden of proving two elements, which is the robbery, the taking of the property, and the armed with a firearm. And both of those have to be proved beyond a reasonable doubt. So to draw a distinction between possessory offenses and offenses like the one here, armed robbery, is legally incorrect. And for that reason, we would say that the case is wrongly decided. We have an important question. We had a long discussion about the Krenkel. Yes. Why should we not, other than maybe make an argument that it was forfeit, why should we not send it back for the Krenkel hearing before deciding the substantive issues? The first thing that I would say is that to be clear, in conceding the Krenkel issue, we're not in any way conceding that there was ineffective assistance. Right. No, we understand. We got you there. So specifically, and this is kind of a specific rather than a more general answer. In this case, the Krenkel claims, I should say the sort of ineffective assistance claims that he presented to the court were he didn't contact my witnesses, he didn't contact the people that I wanted him to contact. This isn't. It seemed like he was talking mainly about maybe alibi witnesses or something. Something. I mean, it's sort of unclear. And she didn't fight for me? Right. But it's not, she underperformed at the motion to suppress and. . . Not that we necessarily require that either. Of course. But I'm just trying to say that there's nothing in those claims that suggests that they're related in any way to the issues that are up for resolution right now. So in that sense, it seems that those issues have been fully presented and can be addressed on their merits separate from the Krenkel hearing. So that would be our position, that this court can resolve those and then it can go back for the preliminary Krenkel inquiry. And that was your prayer for relief as well, right? Yes. Affirm but send it back later with purpose. Yes. So as to the other issues, we would stand on our brief and the case that we cited for you and the argument in our motion to cite additional authority. So thank you. Your Honor, just to clarify regarding the line-up suggestive issue, Michael Smith's identification testimony was suppressed because of viewing the line-up. He said that he viewed the line-up and made his ID while Victoria Talbert and Ashley Lee were in the room, not based on the clothing. And as we've argued, it's the multiple factors that render this line-up unduly suggestive. Ashley Lee and Victoria Talbert, they never specifically said, I picked him out because of the clothes he was wearing. But Ashley Lee on cross said, well, yeah, he was the only person with a tattoo. Victoria Talbert, he was the only person who had the line-up and the white shoes. So because Mr. Clifton was spotlighted and they were able to recall the description that they gave, we're saying that the fact that he was wearing the dark hoodie and the shoes and also had the other two distinctive factors made the line-up unduly suggestive. As to the firearm issue, just briefly, as the State has acknowledged that oral argument, there's a possibility that Michael Smith didn't really see what he thought he saw when he testified at trial. They acknowledge that, you know, at the time of offense, you know, he must have been frazzled or stressed by the offense itself. Therefore, again, we stand that the quality of the evidence is just… No, but that's usually the case. Anytime someone puts a gun to your face, they think you're going to be a little frazzled. I mean, I don't know of anyone who would not be frazzled. Right, and the courts have also acknowledged that that's a factor to consider when finding… It's always a factor to consider whether the testimony is sufficient to implicate… whether the witness accurately described the object as a firearm. As to McLaren, the case we cited, we do want to acknowledge, though, and the Special Concurrence Justice McBeth acknowledges that there shouldn't be a distinction based on a possessory firearm case or a case involving aggravated robbery. Under either offense, the State is still required to prove every element of the offense beyond a reasonable doubt. Therefore, Justice McBeth found that insufficient testimony, as that of the officer, would have been insufficient regardless of whether it was a possessory firearm case or if it was a case involving aggravated robbery with a firearm. Your Honors, if you have no further questions, for the reasons stated in the brief and today in oral argument, we would ask to either reverse this conviction and reduce it to aggravated robbery under Argument 1, reverse conviction or remand for a new trial, Argument 2, under Argument 4, reduce the sentence or remand for resentencing, and then there's the crinkle relief to remand for a rehearing, for a preliminary crinkle hearing. Thank you, Your Honor. All right, thank you for the excellent briefs and argument, and we will take the matter under advisement and be back in touch with you.